**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

IN RE:

JOGI PACK & SHIP SERVICES, LLC,                    CASE NO.: 3:22-00809
                                                   CHAPTER 11

    Debtor.
_____/

JOGI PACK & SHIP SERVICES, LLC,

    Plaintiff,                                   Adv. No. 3:22-00022

v.

THE UPS STORE, INC.,

    Defendant.
_____/

**DEBTOR'S MOTION FOR TURNOVER OF PROPERTY, PRELIMINARY INJUNCTION, AND REQUEST FOR EXPEDITED CONSIDERATION[1]**

Jogi Pack & Ship Services, LLC ("Debtor" or "Plaintiff" or "Debtor-In-Possession"), as the debtor-in-possession, pursuant to 11 U.S.C. §§ 105, 542, and Fed. R. Civ. P. 65, made applicable to these proceeds by Fed. R. Bankr. P. 7065, moves this Court for a preliminary injunction and an order compelling Defendant, The UPS Store, Inc. ("TUPSS" or "Defendant"), to turnover property of the estate, and in support states as follows:

**Introduction and Background**

1.    On April 22, 2022, the Debtor filed the instant Chapter 11 case.

---

[1] The Debtor respectfully requests that the Court schedule a preliminary hearing on the instant Motion at its earliest convenience.

2. On May 3, 2022, the Debtor filed the instant adversary proceeding seeking, among other things, an order compelling the Defendant to turnover property of the estate and an order granting an injunction against Defendant from continuing to violate the automatic stay by exercising control over property of the estate.

3. The Debtor owns and operates a UPS Store franchise in St. Augustine, Florida as a franchisee of TUPSS, which is a subsidiary of United Parcel Service ("UPS").

4. The Debtor filed its bankruptcy case in an attempt to reorganize its business affairs and assume its Franchise Agreement with TUPSS so that it can continue to operate and employ members of the St. Augustine community.

5. The Debtor has operated as a TUPSS franchise since 2009.

6. The Debtor has historically operated at a profit through good management and quality employee training. The Debtor's business as a UPS Store franchise experienced growth during the pandemic.

7. However, in January 2022, the Debtor was notified by TUPSS that it was in default of the franchise agreement due to alleged fraudulent, dishonest, unethical, and immoral conduct. The alleged wrongful conduct, according to TUPSS, stems from alleged overbilling of AT&T and Amazon, which are two very large corporate customers of TUPSS and the Debtor.

8. TUPSS has alleged that the Debtor overbilled more than $950,000.00 in connection with AT&T and Amazon returns between January 2020 and 2022.

9. However, TUPSS has provided no evidence of intentional wrongdoing nor has it provided the Debtor with specific information showing that $950,000 was wrongfully billed and collected.

10. The Debtor's annual revenues for 2020 and 2021 were roughly $1.2 million each year. If TUPSS were correct (which it is not), then almost one third of the Debtor's revenues were the result of overbilling.

11. The Debtor submits that any potential overbilling was a direct result of either an accounting error on the part of TUPSS (who controls the billing and accounting systems of the Debtor), or an error by TUPSS in how it previously directed the Debtor to process AT&T and Amazon return items.

12. Prepetition, Debtor's business has now suffered from TUPSS taking more than $450,000.00 out of its operating account during the 90 day period prepetition.[2] The statement showing the monies that were wrongfully taken by TUPSS prepetition is attached to the Complaint as Exhibit "A."

13. The Debtor submits that all monies taken prepetition are property of the estate. Even if overbilling occurred, Defendant would not be the entity entitled to any repayment. The customer, which in this case would be either AT&T or Amazon, would be entitled to repayment.

14. Without the Withheld Funds (or at least a portion of them), this small business Debtor will likely be unable to effectively reorganize.

15. The Debtor, through undersigned counsel, sent a turnover and preference demand letter on April 26, 2022 to Defendant's last known counsel.

16. Prior to the filing of the Complaint, Defendant sent Plaintiff a letter stating that it will not accept Plaintiff's demand.

---

[2] Any funds that Defendant took prepetition will be referred to as the "Withheld Funds."

**Basis for Relief**

17.     By this Motion, the Debtor is requesting that the Court enter an order compelling TUPSS to turnover property of the estate and enter a preliminary injunction against TUPSS, to the extent necessary, to prevent it from exercising control over the Debtor's property.

18.     Section 363 of the Bankruptcy Code gives the trustee or in this case the Debtor-In-Possession the right to use, sale, or lease property of the estate.

19.     In addition, pursuant to Section 542, the Debtor-In-Possession has the power to require turnover of property of the estate. 11 U.S.C. § 542(a).

20.     The Withheld Funds are property which the Debtor may use, sell or lease pursuant to 11 U.S.C. § 363 as the Debtor-In-Possession.

21.     TUPSS is in possession of the Withheld Funds and the Debtor, as Debtor-In-Possession, is entitled to recover the property pursuant to 11 U.S.C. § 542.

22.     The Debtor is also requesting related relief in the form of a preliminary injunction to prevent TUPSS from continuing to exercise control over any property of the estate.

23.     While the primary concern at this juncture is to obtain the turnover of the Withheld Funds, the Debtor also wants to ensure that TUPSS discontinues all further efforts to collect any alleged debt owed or otherwise withhold any property of the estate from the Debtor.

24.     Federal Rule of Civil Procedure 65, made applicable to these proceedings by Fed. R. Bankr. P. 7065, provides that the Court may issue a temporary restraining order or preliminary injunction.

25. Section 105(a) of the Bankruptcy Code authorizes this Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

26. The purpose of a preliminary injunction is to protect a party from irreparable injury and to preserve the Court's power to render a meaningful decision after a determination on the merits.

27. The Eleventh Circuit has stated that the party requesting a preliminary injunction must show that:

> (1) it has a substantial likelihood of success on the merits of the underlying case when the case is ultimately tried; (2) irreparable injury during the pendency of the suit will be suffered unless the injunction issues immediately; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Alabama v. Army Corps of Engineers*, 424 F.3d 1117, 1131 (11th Cir. 2005).

28. **Substantial Likelihood of Success on the Merits.** As set forth above, the Defendant has clearly engaged in violations of the automatic stay that continue to harm the Debtor's business.

29. **Plaintiffs Will Suffer Irreparable Injury Unless the Injunction Issues Immediately.** The Plaintiff, its creditors, and its employees have a very low possibility of enjoying a successful Chapter 11 reorganization unless the Court orders Defendant to immediately cease all acts that constitute stay violations, which primarily includes turning over the Withheld Funds.

30. **The Threatened Injury to Plaintiffs Outweighs Whatever Damage the Proposed Injunction May Cause Defendant.** Unlike the immediate and irreparable harm

that will occur to Plaintiff and specifically to the Chapter 11 estate of the Plaintiff, Defendant will endure no harm if a preliminary injunction is issued. Plaintiffs have been, and still currently are, materially affected in a negative manner as a result of the actions of Defendant. In addition, Defendant is a subsidiary of one of the world's largest courier companies. Defendant would suffer no harm in the event this Court orders it to return the Withheld Funds to the Debtor and otherwise cease any and all collection activity.

31. **Issuance of a Preliminary Injunction Would Not Be Adverse to the Public Interest.** The issuance of a preliminary injunction in this instance would preserve potential assets of the bankruptcy estate. It is in the public interest to prevent the type of actions explained in this Motion and in the Complaint, including preventing franchisors from wrongfully holding property of a franchisee and attempting to force franchisees such as the Debtor out of business. Under the present circumstances, it is clear that the issuance of a preliminary injunction would not be adverse to the public interest. The injunctive relief requested herein will also serve the public interest by allowing the Debtor to continue to operate its business, retain its employees, and continue to provide services to the St. Augustine, Florida community.

32. For the reasons stated herein, the Debtor is entitled to a temporary restraining order and preliminary injunction staying, restraining, and enjoining the Defendant from withholding the Debtor's property and otherwise violating the automatic stay.

WHEREFORE, the Debtor respectfully requests entry of an order granting this motion, requiring that turnover of the Debtor's property, entering a preliminary injunction against Defendant to enjoin it from violating the automatic stay, scheduling a preliminary

hearing on an expedite basis, and granting the Debtor such other and further relief as the Court deems appropriate.

Dated: May 5, 2022                                      Respectfully submitted,

**Bruner Wright, P.A.**
*Proposed Counsel for the Plaintiff and Debtor-In-Possession*
2810 Remington Green Circle
Tallahassee, FL 32308
Office: (850) 385-0342
Fax: (850) 270-2441

By:   */s/ Byron Wright III*
       Robert C. Bruner
       Florida Bar No. 0065876
       rbruner@brunerwright.com
       Byron Wright III
       Florida Bar No. 118971
       twright@brunerwright.com

**CERTIFICATE OF SERVICE**

I, Byron Wright III, hereby certify that a true and accurate copy of the above document was served on the following in the manner stated below:

1. **Served by the Court via Notice of Electronic Filing (NEF):** I have confirmed that the foregoing document was served by the Court via NEF on May 5, 2022 to the following persons at the email addresses noted herein:

Robert C Bruner on behalf of Plaintiff Jogi Pack & Ship Services, LLC
rbruner@brunerwright.com,
twright@brunerwright.com;melanie@brunerwright.com;laura@brunerwright.com;jackson@brunerwright.com

2. **Served by U.S. Mail:** The foregoing document was served by first class, postage prepaid, U.S. Mail on the Defendant at the following address:

The UPS Store, Inc.
6060 Cornerstone Court West
San Diego, CA 92121

The UPS Store, Inc.
Attn: Corporation Service Company as Registered Agent
251 Little Falls Drive
Wilmington, DE 19808

3. **Served by Electronic Mail**: The foregoing document was served via electronic mail to Mark McDonald, Esq. at mmcdonald@mofo.com

Date: May 5, 2022                           */s/ Byron Wright III*
                                            Byron Wright III